DEBORAH M. SMITH
Acting United States Attorney

STEPHEN COOPER
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
(907) 456-0245

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CAROL BOLT, | ) No. F02-0021 CV (RRB) |
| Plaintiff, | ) |
| vs. | ) **DECLARATION OF JOHN J.** |
| | ) **CURRY UNDER 28 U.S.C. §** |
| UNITED STATES OF AMERICA, | ) **1746** |
| Defendant. | ) |

I, John J. Curry, declare under penalty of perjury:

    1.    From 1997 to 1999 I was the Post Commander of Fort Wainwright, Alaska. As such, I was both Garrison Commander and was also charged with the functions and authority of Installation Commander. These functions and authority applied to all of the subject areas covered in this Declaration.

2.   Each year in the fall I issued the Snow Removal Policy, setting the priorities and allocating the duties and responsibilities for the snow removal operations on post. In September 1998, I issued the Snow Removal Policy governing those operations during the winter of 1998-1999. A true copy of the 1998-1999 Snow Removal Policy is attached hereto as Attachment A. This Policy continued the previously established priorities for snow removal on post which placed family housing area parking lots in last priority, provided for the Directorate of Public Works (DPW) which carries out snow removal on post to clear those lots once per year in late winter as cleanup to get rid of the built up hard-pack before break-up (Attachment A at 3), placed on the residents of family housing the responsibility for all other snow and ice removal and for sanding hazardous areas at their quarters, grounds and common areas, and noted that sand would be available for pick up at Public Works for this purpose (Attachment A at 1-2). The areas to which this responsibility of residents applies are those indicated by applicable regulations and described in the Residents' Handbook mentioned below, and consist of any areas the residents use between their quarters and the public street, such as parking areas, driveways, walks and dumpster areas, that become hazardous by reason of snow or ice. In the case of a common parking lot serving several apartment buildings, the term "driveways" includes the parking lot and its entrances, and any dumpster situated in the parking lot.

3.   In doing this, I was constrained both by applicable directives and policies from higher authority and by the limited resources allocated by higher headquarters for that purpose and for the other operations of the post. The allocation was always less than we asked for.

During the period that I was Post Commander, the economic resources allocated for operation of Fort Wainwright were constantly decreasing. In 1998, DPW had received from higher headquarters a 48% cut in the staffing for snow removal operations from the staffing level for the winter of 1997-1998. When I issued the 1998-1999 Snow Removal Policy, I took that fact into account in assigning priorities and responsibilities.

4. In formulating the terms of the Snow Removal Policy for 1998-1999, I would have followed my normal and regular practice of consulting the Director of Public Works, who was then Lt. Col. Michael T. Meeks, and the troop units at Fort Wainwright, Post Safety, Training, Logistics, Community Activities, the Staff Judge Advocate, and all directorates on post. Lt. Col. Meeks advised me of the manpower, equipment and other resources he had available, and the requirements and relative priorities of the snow removal tasks DPW had to carry out. Based on this information on available resources and the requirements and priorities, and based on priorities imposed by higher headquarters and by official directives and regulations, as well as precedent from prior snow removal policies, in consultation with those I have mentioned, I weighed these respective factors and decided on the most efficient and effective way to balance the snow removal needs and the available resources. The result was the Snow Removal Policy as issued.

5. The factors that governed my decisions reflected in the Snow Removal Policy for 1998-1999 were many, including the following:

    a. DoD Directive 4001.1 granting the post commander broad authority to decide how best to accomplish the mission of the post;

    b. DoD Directive 4165.63-M granting the post commander broad authority and responsibility for providing housing facilities and services, requiring that housing be managed in a way that will provide excellent facilities and services in the most cost-effective manner, and requiring that self-help by residents be promoted and encouraged as a means of improving living conditions and promoting a feeling of homeownership;

    c. Army Regulation, 32 C.F.R. § 552.18(c), making commanders responsible for the "efficient and economical" operation, administration, service and supply of the individuals, units and activities assigned to the post;

    d. **Army Regulation 210-50 requiring post commanders, in providing military housing, to utilize self-help performed by residents to the maximum extent practicable, to assign residents the duty to maintain common areas as well as the areas around their own quarters, and** stating that the underlying policy reasons for the self-help program are to reflect the "prudent landlord" concept, to optimize the use of scarce resources, and to give residents a feeling of "homeownership";

    e. Army Pamphlet 210-2 requiring residents to maintain common areas adjacent to their quarters, including parking areas and areas around dumpsters, and to remove snow and ice and to spread sand on ice on paved and stabilized areas;

    f. The limited available manpower and equipment in relation to the large total combined surface area on Ft. Wainwright requiring snow removal, including the airfield areas, the streets, roads and parking lots, and other areas; while two years earlier the Snow Removal Policy had provided for DPW to

clear housing area parking lots twice during the winter, in the winter of 1998-1999 DPW's resources were not sufficient to provide more than one clearing of those lots for the entire winter while carrying out the higher priority snow removal services for the entire post and its military mission-related requirements, as indicated by the information provided to me at that time by Lt. Col. Michael T. Meeks, Director of Public Works;

  g. The resulting economic necessity – in addition to the obligation to apply the self-help policy reflected in the above directives and regulations – to assign to the residents in all family housing areas the duty and the entire responsibility for snow and ice removal around quarters and in common areas, and to sand hazardous areas including any areas they use between their quarters and the public street, such as parking areas, walks and dumpster areas, that become hazardous by reason of snow or ice, except for the once-per-year removal of the hard-pack in late winter by DPW.

  6. The residents' responsibility for snow and ice removal around their quarters and in common areas such as the parking lot and dumpster area was conveyed to residents in several ways, including:

  a. The Conditions of Occupancy which residents must sign before beginning occupancy of the assigned quarters, accepting the stated duties and responsibilities including snow and ice removal as necessary or required; a sample of the Conditions of Occupancy is included in the Residents' Handbook;

  b. The Residents' Handbook which I was required by regulations to issue and to provide to residents, and for which the residents must sign when they receive it, reflecting the priorities and allocations of

responsibility established in the Snow Removal Policy and explaining them, requiring residents to keep common areas clear of trash, snow and ice, describing common areas as including parking areas and dumpsters, and notifying residents that supplies were available from the self-help center for their use in carrying out these duties;

  c. Periodic mandatory "town hall" meetings at which residents' responsibilities as well as all the snow removal provisions were publicly reviewed;

  d. Publication of the Snow Removal Policy in the post newspaper;

  e. Posting of the Snow Removal Policy in public places including units where military members are assigned for duty, commissary where residents shop, and the like.

  7. As a resident of military housing, I understood the residents' snow removal duties extended to common areas such as dumpsters, as did the other residents I observed. I sanded such common areas as the walkway to the dumpster and the area at the dumpster, and I observed other residents doing the same.

  8. My policy decision to assign the responsibility for winter maintenance of common areas at family housing entirely to the residents, except for once-a-year clearing by DPW, thereby relieved DPW of those responsibilities and enabled DPW to carry out the higher priorities in the Snow Removal Policy. I relied on the availability of self-help by residents of family housing as an important resource in accomplishing the snow removal requirements of the post and its mission with limited resources, in accordance with Defense Department and Army policy promoting and

encouraging the use of self-help in this way to the maximum extent practicable. Accordingly, the post did not provide for maintenance or inspections of housing area parking lots except inspections by Post Services, not for the purpose of identifying hazards for DPW to correct, but solely to check on residents and determine if they were fulfilling their maintenance responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2006.

John J. Curry

APVR-WPW-O                                         22 September 1998

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Fort Wainwright, Alaska Snow Removal Policy for 1998-1999.

1. **GENERAL:** Public Works staffing for snow removal operations has been cut by 48% from the staffing level of the 1997-1998 winter season. This is a result of the ongoing USARAK hiring freeze and the FY98 and FY99 work year restrictions imposed by higher headquarters. Snow removal operations will be conducted in accordance with the priority system as outlined in this plan however response times will be extended due to the staffing cut. Out of sequence plowing in support of special events will be considered on a case-by-case basis when requirements are identified two weeks in advance by submitting a DA Form 4283 through command channels to the Public Works Customer Service Representative at building 3015.

2. **RESPONSIBILITIES:**

   a. The Directorate of Public Works is responsible for the overall snow and ice control operations on the Fort Wainwright cantonment area in accordance with the USARAK Snow Removal Policy dated 21 January 1997. Other area and unit responsibilities are as designated in subparagraphs b through f below.
      (1) Removal of snow from streets, parking lots, airfield, and similar areas is the direct responsibility of Public Works in accordance with paragraph 3, PRIORITIES. Snow removal operations commence when the accumulation of snow since the last plowing has reached two inches on the Running Route or runway and four inches for all other areas.
      (2) Routine sanding of roads for ice control during duty hours will be scheduled as required. Other sanding requirements will be identified by the Provost Marshal's Office which will notify Public Works directly.

   b. The 864th Engineer Battalion, with fuel and repair parts support from Public Works, is responsible for snow and ice removal operations in the following areas:
      (1) The lower ammunition storage area (2200 area).
      (2) The range complex South of the Richardson Highway.
      (3) The upper ammunitions storage area including Kinney Road, the Bailey Bridge, River Road to Sage Hill Road and Sage Hill Road.
      (4) Birch Hill Loop and Transmitter Site Road to the tower complex at the top of Birch Hill.
      (5) Assistance, as mission permits, in the removal of snow from main post streets and parking lots.

   c. Family housing occupants are responsible for removing snow and ice on steps, porches, fire hydrants, post office box drops, driveways, and sidewalks to a point at least halfway

to adjoining quarters. Occupants will sand hazardous areas. Sand will be available for pickup from Public Works. For further information call 353-7870.

    d. Housing area unit sponsors are responsible for the removal of snow and ice from sidewalks, post office drop boxes, bus stops, and mechanical room accesses within their areas of responsibility when it is not accomplished by area occupants.

    e. Unit commanders and building custodians are responsible for the removal of snow and ice from window ledges, exterior fire ladders, porches, and all doorways and walkways. Personnel will not go on the roof of any building without the approval of Public Works.

    f. Units and activities occupying maintenance facilities and motor pools are responsible for snow removal at their facilities, including parking lots and fenced yards.

## 3. PRIORITIES:

    a. Snow removal operations are conducted on a sequential priority system which is subject to change during emergency situations, such as continuous heavy snowfall or high winds.

    b. The Post sequential priorities are as follows:

        (1) *Priority 1* - **HEALTH AND SAFETY**.
            (a) Major roadways for fire, ambulance and Military Police - Gaffney; Ketcham; Montgomery; Meridian; Santiago; Neely, including the South sidewalk between Arctic Light and Tanana Satellite Schools; Southgate; 600th St.; Whidden; 6th St.; Alder (6th St. to 9th St.); 9th St.; Apple to 100th St. to 1300 area to Dogwood at bldg. 1032 to 103rd St. to Gaffney; Trainer Gate; River (Gaffney to Trainer Gate).
            (b) Fire Stations
            (c) Hospital emergency area including helicopter pad.
            (d) Airfield fire lanes and MAST Operation area.
            (e) Provost Marshall Office.

        (2) *Priority 2* - **MISSION RELATED**.
            (a) DRB related facilities and activities as described in Appendix A.
            (b) Running Route (North side of Hangar 2 to Fire Station No. 1, Northeast to taxi way, East down taxi way to Ketcham, North to Gaffney, and West to 102d Street. Santiago from Fire Station No. 1 to Rhineland, to Ile De France and East to Luzon, North on Luzon to Hangars 4 and 5, and North to taxi way).
            (c) Access routes for Post Headquarters, Power Plant, Water Plant, DOL Warehouse (3030), Public Works, Troop Issue Warehouse, Medical Supply Warehouse, Transportation Motor Pool, KAMISH Clinic (3406), Bassett Army Hospital, and Landfill..
            (d) Roads - Chippewa, Oak, Alder, Tamarack, and 602nd St.
            (e) Airfield:
                - Hangars.
                - South taxi way.

    (3) *Priority 3* - *ROADS & AIRFIELD PHASE II*
        (a) Troop and residential area roads.
        (b) Airfield:
            - North runway and inner loop.
            - Taxi ways.

    (4) *Priority 4* - *PARKING AREAS FOR PUBLIC SERVICES & ADMIN.*
        (a) Post Headquarters (1555), One Stop Center (3401), Hospital (North & South lots), KAMISH Clinic, Bldg. 1064, Judge Advocate General (JAG) Parking, Telephone Exchange, Commissary/PX Mall, Physical Fitness Center, Malaven Gym, Unit Chapel (3430), Post Office, Child Development Center, Child Development Services (4176), Youth Center/Shoppette, Chapel, ACS (3722), Education Center, Self-Help Facility, Laundry (3025), CPO, Sports Store, Burger King, Library/ Credit Union/Bowling Center, Thrift Shop, Auto Crafts, Arts and Crafts, Last Frontier Club, Arctic Oasis, Ski Lodge, Recreational Vehicle Storage Lot, and Outdoor Recreation Center, Vet. Clinic.
        (b) Other Parking areas including Administrative Facilities (1031, 1050, 1053, 1558,1565, 1579,1580, 2077, 2079, 2085, 2106, 2109, 3000, 3004, 3005, 3008, 3010, 3028, 3030, 3407, 3409, 3424, 3438, 3450, 3489, 3490, 3491, 3566, 3567, 3570, 3591, 3597, 3599, 4069, 4070, 4161); Barracks (1001, 1004, 3400 area, 3700 area, 4075); Dinning Facilities (3416, 3451, 3728); Unaccompanied Personnel Housing and Billeting (1045, 1063, 4054, 4055, 4062, 4063, 4064).

    (5) *Priority 5* - *CLEANUP.*
        (a) Roads cleared of snow berms.
        (b) Family Housing Parking Areas (cleared once per year in late February or March). Lots will be posted in advance and will be worked as priorities permit between snow storms.
        (c) Intersections cleared for visibility.
        (d) Airfield cleanup; i.e., behind lights.

## 4. NOTIFICATION AND IMPLEMENTATION OF PLAN:

    a. During normal duty hours, Public Works will monitor the snowfall and implement operations as required. Unusual conditions, such as large, continuous, or repetitive snowfalls will be handled on an individual basis at the discretion of the Director of Public Works.

    b. After duty hours and on holidays, snow removal notification will be made by the Military Police to the Assistant Fire Chief on duty.

    c. Sanding requirements will be identified by the Military Police duty officer, who will contact Public Works.

    d. Special Notice: The time and date of snow removal operations in parking lots and other congested areas will be posted with distinctive signs three days in advance of clearing.

Attachment A Page 3

Vehicles in areas to be cleared will be removed to facilitate snow removal. Areas in which vehicles have not been removed will be bypassed and moved to the bottom of the list due to the possibility of damage and Government liability.

## 5. SNOW REMOVAL TECHNIQUES:

 a. Snow is removed from roads and streets by splitting the roadways at center and moving the snow to either shoulder by successive passes of graders. In curbed areas snow is windrowed at the curb and either blown over the curb or removed.

 b. Snow is removed from parking and open storage areas by windrowing and blowing into unused areas where feasible. Otherwise it is removed by loaders and dump trucks. Storage of snow on "islands" in the family housing areas for later disposal is not authorized due to inherent danger to children.

 c. Removal of snow on runways and taxi ways is accomplished by splitting the area at the center and moving the snow to the marker lights by use of graders and rotary plows in echelon. Snow is blown over the lights by rotary plow. Dusting of threshold lights is the responsibility of Airfield Operations. Snow is not pushed or blown on previously cleaned area.

 d. Removal of snow at hangars and parking aprons is affected by clearing snow from hangar doors far enough for maneuvering equipment and then splitting the area so snow can be moved to the outside edges of aprons in two or more directions by graders and rotary plows.


          JOHN J. CURRY
          LTC, IN
          Post Commander

DISTRIBUTION:
A (FWA)

## APPENDIX A

SUBJECT: Snow Removal at Fort Wainwright During DRB Window.

1. Prior to Fort Wainwright's assumption of the DRB status, the areas listed below will be cleared of snow and their status will be upgraded to Priority 2 in the Snow Removal Plan for the duration of the DRB mission.

2. The areas requiring snow removal during the DRB window are:

    a. Melaven Gym, primary PHA, building 3452: all parking and traffic areas in the immediate vicinity of the building.

    b. Physical Fitness Center, secondary PHA, building 3709: all parking and traffic areas in the immediate vicinity of the building.

    c. Hangar #4, primary VHA, building 2106: traffic access routes and airfield apron areas on sides of the building.

    d. Sage Hill Road access to the upper ASP.

    e. Access to the lower ASP.

3. Areas cordoned off with concertina wire and/or occupied by parked vehicles (either government or privately owned) will not be plowed due to the high potential for damage to the snow removal equipment.

4. In the event of an unusually severe storm at the time of deployment, the Public Works representative at the Command Operations Center will contact the State of Alaska Department of Transportation & Public Facilities to determine if convoys to the Eielson AFB point of departure will require an escort by Public Works snow removal equipment. The Winter Road Condition Recording at 456-7623 indicates whether or not the Richardson Highway is open to traffic. Point of contact at DOT&PF is Mr. Ronald T. Reitano, Fairbanks Maintenance Manager, at 451-2205, if the road is closed.

5. This SOP will remain in effect whenever a unit at Fort Wainwright is in DRB status.