DEBORAH M. SMITH
Acting United States Attorney

STEPHEN COOPER
Assistant United States Attorney
Federal Building and U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701-6282
Phone: (907) 456-0245
Fax: (907) 456-0577
E-mail: Stephen.Cooper@usdoj.gov

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| CAROL BOLT, | ) | Case No. 4:02-cv-21-RRB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **OPPOSITION TO MOTION** |
| | ) | **UNDER RULE 59 TO REVERSE** |
| | ) | **ORDER GRANTING SUMMARY** |
| UNITED STATES OF AMERICA | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

   Defendant, the United States of America, opposes the motion of plaintiff

under Rule 59, FRCP, to reverse the Court's Order Granting Summary Judgment,

docket #48, June 7, 2006.

The motion is essentially a motion for reconsideration. While plaintiff's counsel recites, at p. 1, that he seeks "Amendment of Judgment," he requests, at p. 6, that the Court "reverse" its grant of summary judgment on liability.

The Court's June 7th Order Granting Summary Judgment has the effect of a final decision because it orders dismissal of this action. It therefore appears to be a "final decision" within the meaning of 28 USC § 1291 which defines what is appealable to the court of appeals.

Consequently, Local Rule 59.1 placing a 5-day limit on motions for reconsideration of non-appealable orders does not govern plaintiff's motion. If the motion is within the scope of Rule 59, FRCP, it would be governed by the 10-day limit under that rule. The Order was entered June 7, and plaintiff's motion was filed June 19. The motion is within the 10-day period because intervening weekends are excluded from the computation. Rule 6(a), FRCP.

1.   <u>Rule 59 Relief Is Available Only to Prevent a Miscarriage of Justice and Plaintiff May Not Obtain It to Relitigate Old Issues or Raise New Issues that Could Have Been Raised Sooner.</u>

Rule 59 covers a broad range of motions, and seems to include motions for reconsideration if the motion attacks a final decision on grounds that are substantive, not merely clerical or procedural in nature. Wright, Miller & Kane, <u>Federal Practice and Procedure: Civil 2d</u> § 2810.1, 121-122.

However, Rule 59 relief is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources, and should not be granted "absent highly unusual circumstances" such as newly discovered evidence, clear error, or an intervening change in the law. Kona Enterprises, Inc., v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).  Rule 61, FRCP, applies here by its terms:

> No . . . error or defect in any ruling or order . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

> Accordingly,
> A Rule 59(e) motion nay *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.

Kona Enterprises at 890 (emphasis in original).  Nor may it be used to repeat arguments the party already made earlier. Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th Cir. 2001).

Plaintiff's instant motion, at p. 5, seeks to relitigate matters previously argued by plaintiff, Opposition to Motion for Summary Judgment, docket #37, March 7, 2006, at 40-41, specifically, that Kremer v. Carr's Food Center, Inc., 462 P.2d 747, 752 (Alaska 1969), held the rule of Hale v. City of Anchorage, 389 P.2d 434 (Alaska 1964), inapplicable to establish the duty of a possessor of land to his business invitee; and the contention that the Army as a landlord is prohibited under Alaska law from assigning to residents the duty to keep common areas free of snow and ice. Plaintiff's

Opp. at 39-40. As an attempt to relitigate the same issues already decided, these arguments may not be raised in the present Rule 59 motion. <u>Zimmerman</u> at 740.

Plaintiff further elaborates one of these points now in arguing that the liability of the United States must be found in state standards applicable to a "private person" rather than to a municipality. Plaintiff's Rule 59 Motion at 2-4. If this is deemed a new issue, plaintiff offers no showing why this was not asserted before, and for this reason it is improperly raised for the first time in a Rule 59 motion. <u>Kona Enterprises</u> at 890.

2.    <u>Plaintiff's Points Are Meritless In Any Event.</u>

Plaintiff's points are meritless in any event, for the reasons explained more fully below:

(a)    <u>Kremer</u>, involved only a grocery store rather than an extensive area of streets and sidewalks, and it applied the now-discarded rule that the standard of care differs depending on whether the plaintiff is a business invitee or a licensee. <u>Kremer</u> has been superseded by the reasonable-care standard of <u>Webb v. City and Borough of Sitka</u>, 561 P.2d 731 (Alaska 1977), whereas <u>Hale</u> survives <u>Webb</u> and remains the applicable authority in the context of large-area snow and ice removal, because it applies the same reasonable-care standard <u>Webb</u> applied. <u>Hollinger v. United States</u>, 651 F.2d 636 (9th Cir. 1981), therefore, properly held <u>Hale</u> to be the state authority applicable to snow and ice-related tort claims on military installations.

(<u>See</u> Part 2a of this argument, below.)

(b)    <u>Hale</u> does not apply governmental immunity.  It rests solely on ordinary principles of negligence, and causation, which are applicable to all potential defendants regardless of their status as a governmental entity or a private person. Therefore, <u>Hale</u> supplies the rule of decision in federal tort claims assigning liability "under circumstances where the United States, if a private person, would be liable" under state law.  For this reason also, <u>Hollinger</u> correctly held <u>Hale</u> applicable to tort claims on military installations.  (<u>See</u> Part 2b of this argument, below.)

(c)    Assignment to plaintiff of the responsibility for winter maintenance in common areas was a valid discretionary policy decision by numerous military authorities over a period of years, displacing the duties under state landlord-tenant laws and eliminating governmental tort liability.  Plaintiff's duty existed independently of DPW's acts or omissions, regardless of whether or when DPW also plowed or failed to plow the parking lot in question.  It was proper for this Court to rely on plaintiff's duty in that regard as an independent ground for summary judgment.  (<u>See</u> Part 2c of this argument, below.)

(d)    Further, even if DPW had timely plowed the lot, that would not have eliminated the slippery condition on which plaintiff fell.  <u>See</u> <u>Hale</u> at 437. Consequently, the absence of plowing of the lot did not cause the accident.  Plaintiff's non-performance of the duty to sand that area was a cause.  (<u>See</u> Part 2d of this argument, below.)

2a.  <u>Hale Applies Ordinary Principles of Negligence - a Standard of Reasonable Care Under the Circumstances - and Therefore Hale Applies Here.</u>

Kremer held that the standard of care owed by a city to a "licensee" pedestrian is significantly lower than the standard of card owed by a possessor of land to a "business invitee". <u>Id.</u> at 751-752.  That theory was derived from the Restatement of Torts.  However, <u>Webb v. City and Borough of Sitka</u>, 561 P.2d 731 (Alaska 1977), replaced those Restatement categories with "ordinary principles of negligence," i.e., a "reasonable-care" standard applicable to all, regardless of the "licensee" or "invitee" status of the plaintiff.  <u>Id.</u> at 733-734.  The <u>Kremer</u> analysis has been discarded.

<u>Webb</u> observed that the Restatement had been applied only in "some of our past decisions," and cited a few Alaska cases in the 1967-1969 time frame.  561 P.2d at 732.  <u>Hale</u>, however, was decided in 1964.  It was not one of the decisions that applied the Restatement.  <u>Hale</u> does not address the Restatement, nor does it define the defendant's duty in terms of the Restatement categories of "licensee" or "invitee." It analyzes the facts to determine if any negligence of the city existed and caused the accident.  The premise implicit in the <u>Hale</u> decision is that the city would be liable under ordinary principles of negligence, if negligence and causation were present.

Thus,  the standard of care which <u>Hale</u> applied is, essentially, the same standard later adopted by <u>Webb</u>, i.e., "reasonable care," as applied in the context of the task of clearing snow and ice from city streets and sidewalks.  This is evident

from the sources <u>Hale</u> cites, 389 P.2d at 438: <u>Casper v. City of Chicago</u>, 50 N.E.2d 858, 859-860 (Ill. 1943), quoting previous Illinois authorities applying a reasonableness standard based on the generality of the snow and ice conditions resulting from natural causes at that latitude, finding it unreasonable to require the city to clear the snow and ice before it is made uneven by pedestrian traffic: "It is the generality of a situation resulting from natural causes that gives rise to the rule"; and <u>Pearson v. Boise City</u>, 333 P.2d 998, 1000 (Idaho 1959), citing the general rule that it would be burdensome and impractical to require the city to keep the sidewalks clear at all times as slippery conditions produced by natural causes may remain "despite the efforts of reasonable care and diligence." In other words, <u>Hale</u> and the authorities it relies on do not identify any special status enjoyed by municipalities. Rather, they deal entirely with the difficulty – the practical impossibility – of keeping up with snow and ice removal on city sidewalks in northern latitudes.

Hence, it is specifically the negligence analysis that accounts for the different results in <u>Webb</u> and in <u>Hale</u>. <u>Webb</u> held the city liable for a crack in a sidewalk, but <u>Hale</u> found against liability for snow and ice on a sidewalk due to "the generality of [snow and ice conditions] resulting from natural causes" <u>Casper</u>, 50 N.E.2d at 860, and consequently the unreasonableness of requiring such conditions to be eliminated before those areas are used by the public.

<u>Hale</u> cited additional facts that showed this reasonableness standard to be applicable, namely, that the City of Anchorage had many miles of streets and sidewalks to clear, making it impossible to clear them all before anyone used them.

Hale also notes that under Gilfilen v. City of Seward, 262 F.2d 864 (9th Cir. 1959), a city's liability for failure to remove snow from sidewalks "is predicated on negligence." The source of that rule is "the 1955 edition of A.L.R.2d under the caption 'Sidewalks' . . .". Hale, 389 P.2d at 437, quoting Gilfilen, 262 F.2d at 866. That treatise provides that

> A municipality is not an insurer of the safety of those who use its sidewalks. . . .
>
> A municipality is, however, with respect to ice and snow on its sidewalks, under a duty of using reasonable care to keep such walks reasonably safe for use by pedestrians, taking into account all of the circumstances involved. . . .
>
> [A] municipality is not required to do the impossible, or what is practically impossible, but . . . it is required to exercise ordinary care to keep its sidewalks in a reasonably safe condition for travel . . . . [W]hat is ordinary care must be determined by the locality, the climate, weather conditions, and other circumstances. . . .
>
> [A] city must not be held to a degree of diligence beyond that which is reasonable in view of prevailing climatic conditions in the state.

39 A.L.R.2d 787-789. This is consistent with the authorities Hale relied on. Together with those authorities, it explains the holding of Hale that the prevailing climatic conditions make it unreasonable to require the city to eliminate all snow and ice accumulations that result from natural causes. Hale differed from Gilfilen only

regarding what kind of snow and ice conditions will result in liability.  Hale at 437.

The quoted provisions of A.L.R.2d are also virtually identical to Webb's holding that a city, just as any private owner or occupier of land, is not an insurer, but has a duty of "reasonable care to maintain its sidewalks in a reasonably safe condition for travel" and "must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances . . .".  561 P.2d at 734, 733. Like Hale, and like the authorities preceding Hale, Webb makes no reference to a lesser standard of care for municipalities.  Its rule is one of reasonableness, which it expressly makes applicable to all alike.

While Hale concludes that a municipality is not liable under the stated conditions, 389 P.2d at 437, the defendant's status as a municipality was not the factor that eliminated liability, nor did it reduce the standard of care as Kremer supposed.  Liability was precluded only because naturally caused conditions existed and could not be dealt with, thus showing that the city did all that could reasonably be expected of it.  It was not required to do "what is practically impossible."  39 A.L.R.2d 789; Hale at 437.  That analysis is based squarely on "ordinary principles of negligence," Webb at 733 – the requirement of reasonable care "determined by the . . . circumstances . . . in view of prevailing climatic conditions in the state."  39 A.L.R.2d 789.  This ordinary negligence standard, as applied to snow and ice conditions, fits the facts of the present case also.

Thus, while Kremer has been superseded by Webb's reasonable-care standard, Hale is consistent with that standard and continues in effect.  Hollinger v.

United States, 651 F.2d 636 (9th Cir. 1981), post-dates Webb by several years, and finds Hale to be still authoritative.  Hollinger, and this Court, have therefore properly found that Hale applies to federal tort claims involving natural accumulations of snow and ice on military installations.

Although Hollinger determined that the condition of the snow and ice where the plaintiff in that case fell was not entirely the result of natural causes, the court, in so finding, was applying the Hale standard as the first step in deciding the liability issue.  The Ninth Circuit has thereby recognized the continued validity of Hale and its applicability in federal tort claims arising on a military installation.

2b.    Because Hale Is a Negligence Case and Does Not Apply Governmental Immunity, Hale Therefore Applies to the Negligence Claim in this Case.

Hollinger thus also negates plaintiff's further contention that Hale cannot apply here because it does not apply to "a private person" whereas the Tort Claims Act makes the United States liable "under circumstances where the United States, if a private person, would be liable . . .".  28 U.S.C. § 1346(b) (emphasis added). Plaintiff's argument overlooks the fact that Hale addressed the "circumstances" under which liability is determined, i.e., whether plowing the streets and sidewalks before pedestrians and vehicles used them would be "an impossible task", and also whether the lack of plowing caused the accident in any event since plowing would only have rendered a slip-and-fall more likely.  Hale's finding that the task was "impossible" is a finding of no negligence, because a person cannot be negligent for failing to do

the impossible.  It would be unreasonable to so hold.  These factors - negligence and causation - were the *ratio decidendi* of <u>Hale</u>.  The decision is devoid of any notion that liability was excluded because of the defendant's status as a city, or that given the same factual circumstances the result would have been different if the defendant were not a city.  Under Alaska law, therefore, a person would not be liable "under circumstances" (28 U.S.C. § 1346(b)) as they existed in <u>Hale</u>, regardless of the defendant's status.  This is entirely consistent with <u>Webb</u> which treated the City of Sitka simply as "a landowner" subject to "ordinary principles of negligence," <u>id.</u> at 733, giving no effect whatever to its status as a municipality, and not revealing the existence of any element in Alaska law that would have made the defendant's municipal status relevant to the standard of care or to the city's liability for its torts.

<u>Indian Towing Co. v. United States</u>, 350 U.S. 61 (1955), established that the dichotomy between "proprietary" functions and "uniquely governmental" functions is not imported into the FTCA.  To the same effect is <u>Rayonier, Inc., v. United States</u>, 352 U.S. 315, 318-319 (1957), upholding a tort claim for negligence of the Forest Service in fighting a fire, because the government is not immune to liability for its negligence on the claim that under the law of municipal corporations it was acting in a "uniquely governmental" capacity.  <u>Hale</u>, however, has nothing to do with governmental immunity, or the dichotomy between governmental and proprietary functions.  If such factors may exist for some purposes in state law, they played no part in the <u>Hale</u> case.

Moreover, snow-plowing is not a uniquely governmental function in any event.  <u>Hale</u> made no determination that it was.  <u>Indian Towing</u> suggested that it is

hard to think of any operational activities of the government that are "uniquely governmental" in the sense that they "ha[ve] not at one time or another been, or could not conceivably be, privately performed." 350 U.S. at 68. That is consistent with the facts of the present case. The deposition of Paul DeHaven showed that the Army on Ft. Wainwright had in fact begun contracting out to private contractors a portion of the snow removal functions on the post. Plaintiff's Opp. to Motion for Summary Judgment, docket #37, March 7, 2006, Appendix 14, p. 5; Reply to Opp. to Motion for Summary Judgment, docket #42, March 21, 2006, Exhibit 13, p. 10. If such acts of a private contractor should give rise to a claim of negligence, the United States could not be held liable for that negligence. 28 U.S.C. § 2671. The action would lie against the contractor instead. If the contractor were sued, there is no reason to conclude that Hale would not apply to the contractor the same as it would apply to a municipality, provided the contractor were in the same position as the municipality in Hale, i.e., faced with the "impossible task" of clearing all the streets and sidewalks before pedestrian and vehicular traffic began to use them. Hale's purely factual analysis, based on negligence and causation, would apply equally well to a city or a private independent contractor for the city, in the same manner that Webb applied its reasonable-care standard to a city and to all other occupiers of land. In short, it was not the nature of the defendant - i.e., governmental vs. private - but rather the nature of the task faced by the defendant, and the lack of causation, which formed the basis for the Hale decision. Hollinger and this Court, therefore, properly applied that case to this federal tort claim.

2c.    <u>Plaintiff's Responsibility for Snow and Ice Removal at the Spot Where
She Fell is a Sufficient Independent Ground for Summary Judgment.</u>

Plaintiff objects that the assignment of snow and ice removal duties to
her as a resident, which duty her husband accepted in writing as a condition of
occupancy, is prohibited by the Alaska laws governing landlords and tenants.  There
is no dispute that this assignment of common area maintenance duties did not
necessarily conform to the requirements of Alaska landlord-tenant laws.  However,
that fact is not material.  The assignment of those duties to residents is valid because
it results from well-established military regulations and policies which displace the
state law duties of landlords and tenants.

Those military policy decisions are of the kind Congress intended to
shield from tort liability by the provisions of 28 U.S.C. §2680(a), all as fully litigated
by the parties prior to entry of the Order plaintiff now seeks to contest.  <u>See</u>
particularly Motion for Summary Judgment, docket #31, January 31, 2006, at 4-8,
setting forth the entire range of directives and regulations which place on residents
the duty to maintain their common areas, and which require and encourage post
commanders to promote the use of residents' self-help to the maximum extent
practicable.  DoD directives, Army regulations, and the post commander's Snow
Removal Policy displaced the state law duties of landlords, in the protected exercise
of discretion.  In fact, some essential parts of the military regulations and policies
assigning these duties to residents pre-dated Alaska's 1974 adoption of its present
landlord-tenant laws.  Motion for Summary Judgment, docket #31, January 31, 2006,
at 6, quoting Exhibit 6, DA PAM 210-2, September 15, 1971, §§ 6-1 & 7-5.

These regulations and policies eliminated any role for the Army and its DPW at Ft. Wainwright regarding snow and ice control at family housing quarters and adjacent common areas beyond the once-a-year clearing of hard pack from the parking lot in late winter, and leaving all other responsibilities for snow and ice removal and sanding entirely to the residents. Plaintiff has not refuted the showing that placing that duty on residents was a protected exercise of discretion. The discretionary nature of the assignment of that duty to plaintiff, under the terms of §2680(a), renders immaterial the duties of landlords under state law regarding common area maintenance, and the question whether and under what conditions a landlord's duties under state law may be transferred to tenants.

The fact that the DPW did not clear the snow from the lot before the end of March is immaterial to the continued validity of plaintiff's assigned duty to sand hazardous areas such as the dumpster area where she fell. This is true because plaintiff's duty was not conditioned on DPW's actions. It existed at all times without regard to whether or when the lot might be plowed. For the same reason, DPW's noncompliance with a requirement to plow the lot in March could not overcome the fact that Army regulations and policies eliminated the Army's duty to maintain common areas, beyond clearing the hard pack once a year.

It was therefore proper for the Court's Order to cite plaintiff's duty as an additional ground for the absence of liability. The legal support for that duty does not exist in Alaska law, but arises from the discretionary nature of the military decisions which assigned the duty to the residents themselves instead of placing it on the Army.

Thus, the duty to conduct winter maintenance in the common area where plaintiff fell and to sand slippery spots in that area rested solely on the residents, including plaintiff, regardless of the requirements of Alaska state law. The absence of prior plowing of the lot did not negate that duty. Plaintiff's responsibility for sanding the area around the dumpster where she fell was therefore a sufficient ground to deny governmental liability and to grant summary judgment, independently of the <u>Hale</u> decision.

2d. <u>Absence of DPW's Clearing of the Lot Before the Accident is Immaterial As It Would Not Have Prevented the Accident.</u>

The failure to clear the snow from the lot before April 1st is immaterial on the additional and independent ground that it was not a cause of the accident. As <u>Hale</u> observed,

> the most diligent effort to clean off such an area would leave a smooth surface of ice, more dangerous than the original condition . . . because of the removal of the uneven surfaces of ice that could provide footing.

389 P.2d 437. This shows the lack of a causal link between plaintiff's fall and the absence of prior clearing of the snow from the parking lot where she fell. DPW's duty was only to plow the lot, so as to make it usable by vehicles during breakup. It was plaintiff's duty to sand the slick spots which would have existed whether or not

the lot was plowed.

The freezing and thawing cycles had previously caused the snow in the parking lot to melt and freeze, forming ice in areas of the lot, including the dumpster area. But that ice was already in place well before this accident. There had been no new thawing and refreezing for six days prior to the morning of April 1st when plaintiff fell. The low temperature that morning was 21 degrees. The previous day's low had been 4 degrees. Motion for Summary Judgment, docket #31, at 3. Even if DPW had cleared the lot any time within the six days preceding April 1st, the icy spot where plaintiff slipped on April 1 would have been just as dangerous, or more so, unless plaintiff or her neighbors had carried out their duty to sand it.

For these reasons, DPW's not having plowed the snow from the lot before the accident is immaterial. Timely plowing would not have prevented the accident because it would not have eliminated the need for plaintiff to sand the spot where she fell.

<u>CONCLUSION</u>

Plaintiff's motion should be denied because:

1. It asserts matters which have already been argued in this proceeding or which could have been raised sooner, and therefore has not shown a miscarriage of justice or any ground to warrant the extraordinary relief of a Rule 59 motion;

2.  The issues raised are without merit in any event:

(a)  the Ninth Circuit and this Court have properly found <u>Hale v. City of Anchorage</u> to be the governing state authority in the context of large-area snow and ice removal, applicable to snow and ice-related tort claims on military installations, because <u>Hale</u> applied the proper standard of care, i.e., reasonable care under the prevailing circumstances, which was subsequently reaffirmed by <u>Webb</u>'s rejection of the Restatement of Torts and the <u>Kremer</u> analysis;

(b)  <u>Hale</u> is the controlling authority on the further ground that it did not apply governmental immunity or any different standard than would be applicable to a private landowner; instead, it applied ordinary principles of negligence to assess the reasonableness of the defendant's conduct in not removing natural accumulations of snow and ice, due to the generality of that situation and the impossibility of eliminating the slippery condition before the public used the area;

(c)  assignment to plaintiff of the responsibility for winter maintenance in common areas was a valid discretionary policy decision by numerous military authorities over a period of years, displacing the duties under state landlord-tenant laws and eliminating governmental tort liability.  Plaintiff's duty existed independently of DPW's acts or omissions regarding plowing the parking lot.  It was proper for this Court to rely on plaintiff's duty in that regard as an independent ground for summary judgment; and

(d)    further, even if DPW had timely plowed the lot, that would not have eliminated the slippery condition on which plaintiff fell.  See Hale at 437. That spot still required sanding, for which the residents, including plaintiff, were solely responsible.  There was no causal link between failure to clear the snow from the lot and plaintiff's fall.

For all of the above reasons, the Order Granting Motion for Summary Judgment was properly entered, and the Rule 59 motion to reverse the Order should be denied.

RESPECTFULLY SUBMITTED this 7th day of July, 2006, at Fairbanks, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

/s/ STEPHEN COOPER
Assistant United States Attorney
Federal Building and U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701-6282
Phone: (907) 456-0245
Fax: (907) 456-0577
E-mail: Stephen.Cooper@usdoj.gov

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing OPPOSITION TO MOTION UNDER RULE 59 TO REVERSE ORDER GRANTING SUMMARY JUDGMENT was sent to Robert A. Sparks on July 7, 2006, via electronic means.

/s/ STEPHEN COOPER
Office of the United States Attorney