FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAROL BOLT,<br>　　　*Plaintiff-Appellant,*<br>　　　v.<br>UNITED STATES OF AMERICA,<br>　　　*Defendant-Appellee.* | No. 06-35993<br>D.C. No.<br>CV-02-00021-F-<br>RRB<br>OPINION |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
August 10, 2007—Anchorage, Alaska

Filed December 3, 2007

Before: J. Clifford Wallace, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez;
Concurrence by Judge Wallace

---

### SUMMARY

**Government Law/Torts**

The court of appeals affirmed a judgment of the district court in part, reversed in part, and remanded. The court held that the Army's failure to meet its duty to conduct its yearly snow and ice removal from a common parking area where a resident slipped did not fall with the discretionary function

15599

exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346.

Appellant Carol Bolt, injured after she fell on snow and ice in the common parking area of the U.S. Army apartment complex where she lived in Alaska, brought a negligence claim in district court against appellee the United States pursuant to the FTCA. The Army's snow removal policy required snow removal once per year in late February or March, and its housing handbook additionally imposed specific duties on the senior occupant to insure all common areas were free of snow and ice and to report conditions beyond his capability to handle. The district court ruled that the discretionary function exception to the FTCA's grant of jurisdiction did not apply because Army policies set forth specific and mandatory rules for snow and ice removal from parking areas. However, the court granted the government's motion for summary judgment, concluding that the Army was similar to a municipality and therefore, in light of *Hale v. City of Anchorage*, 389 P.2d 434 (Alaska 1964), not liable for injuries due to natural accumulations of snow and ice.

Bolt appealed and requested reassignment to a different judge on remand.

[1] As the party seeking federal jurisdiction, Bolt had to demonstrate that Alaska law would recognize a cause of action in negligence against a private individual for like conduct. [2] Alaska imposes a statutory duty on civilian landlords that includes an obligation to remove snow and ice. Because an Alaska landlord would be liable to a private individual under like circumstances, Bolt adequately alleged a claim under the FTCA based on the Army's failure to clear the common parking area of snow and ice.

[3] Section 2680(a) provides that no liability shall lie for claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the

part of a federal agency or an employee of the government. To determine the applicability of this exception, courts apply a two-prong test and ask whether the alleged wrongful conduct violated a specific and mandatory regulation or statute. If so, the conduct is outside the realm of discretion. If there is no mandatory regulation or statute involved, courts then ask whether the conduct was susceptible to being based upon social, economic, or political policy. [4] The Army's snow removal policy expressly imposed a specific and mandatory duty to clear family housing parking areas of snow and ice once a year. The Army has failed its burden under the first prong.

[5] That the Army considers its limited financial resources in making snow removal decisions did not support application of the exception. In enacting § 2680, Congress did not intend to protect decision-making based on budgetary constraints. [6] Also, that the Army considers its policy of promoting self-help and responsibility among resident homeowners in making snow removal decisions did not support application of the exception. Because the Army did not design its snow removal policy so as to allow for consideration of resident self-help in deciding when to conduct the yearly snow and ice removal, it could not shield its failure to implement its own requirement under this rationale.

[7] Maintenance work is not the kind of regulatory activity to which the Supreme Court envisioned the discretionary function exception applying. [8] Not only does clearing snow and ice from parking lots constitute a matter of routine maintenance beyond the scope of the discretionary function exception, but the maintenance at issue in Bolt's case involved safety considerations under an established policy rather than the balancing of competing public policy considerations. In these circumstances, imposing tort liability would not lead to judicial second-guessing of the Army's policy decisions. The judgment of the district court had to be affirmed on this issue.

[9] Because it was undisputed that the Army failed to meet its duty under Alaska law, summary judgment in the government's favor was inappropriate. [10] In concluding to the contrary, the district court incorrectly relied on *Hale*, which holds that municipalities are not liable for injuries sustained by persons due to ice and snow on sidewalks. The judgment of the district court had to be reversed on this issue. Whether the Army did in fact breach its duty was a question of fact to be determined on remand. [11] However, although the district judge incorrectly applied Hale, there was no reason to think that on remand he would have difficulty applying the correct law to Bolt's negligence claim. Bolt's request for reassignment had to be denied.

Judge Wallace concurred in the result, writing that once it is determined that the alleged conduct violated a specific or mandatory regulation, that conduct automatically falls outside the realm of the discretionary exception and further analysis is not needed—the majority's remaining jurisdiction analysis was unnecessary.

## COUNSEL

Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, Alaska, for the appellant.

Eric J. Feigin, Department of Justice, Civil Division, Washington, D.C., for the appellee.

## OPINION

PAEZ, Circuit Judge:

After Carol Bolt fell on snow and ice in the common parking area of the U.S. Army apartment complex where she

lived, in Fort Wainwright, Alaska, she brought a negligence claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The district court held that the discretionary function exception to the FTCA's grant of jurisdiction, *see* § 2680(a), did not apply because Army policies set forth specific and mandatory rules for snow and ice removal from parking areas. It granted the government's motion for summary judgment, however, concluding that the Army was similar to a municipality and therefore, in light of *Hale v. City of Anchorage*, 389 P.2d 434 (Alaska 1964), not liable for injuries due to natural accumulations of snow and ice.

We affirm in part and reverse in part and remand for further proceedings. We affirm the district court's jurisdictional ruling that the FTCA's discretionary function exception does not apply, but we reverse the grant of summary judgment pursuant to *Hale* because the relevant question here is whether a private landlord, not a municipality, would be liable for negligence under similar circumstances. Lastly, we deny Bolt's request for reassignment to a different district court judge on remand.

I.

In April 1999, Bolt slipped on snow and ice near a dumpster in a public parking area of her apartment complex, which is located on the Fort Wainwright military base. As a result of the accident Bolt suffered a broken ankle. Because Bolt was pregnant at the time of the fall, she underwent necessary surgery on her ankle without general anesthesia. Despite the surgery, her ankle never completely healed and poses a permanent disability.

Bolt brought a civil suit against the United States in the United States District Court for the District of Alaska, alleging negligence under 28 U.S.C. § 1346 and seeking money damages. The district court concluded that it had jurisdiction

over her claim but granted the government's motion for summary judgment, relying on a 1964 case by the Alaska Supreme Court, which held that municipalities are "not liable for injuries sustained by persons due to ice and snow on sidewalks." *Hale*, 389 P.2d at 437. Bolt timely appealed.

## II.

As we will explain, the district court correctly exercised jurisdiction over Bolt's claim under 28 U.S.C. § 1346(b); we have jurisdiction over her timely appeal under § 1291. We review *de novo* a district court's grant of summary judgment. *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001).

## III.

[1] Section 1346(b) establishes federal jurisdiction over civil suits for money damages against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

"Even when the injury occurs on federal property, the finding of negligence must be based upon state law." *Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir. 1982). As the party seeking federal jurisdiction, Bolt must therefore demonstrate that Alaska law would recognize a cause of action in negligence against a private individual for like conduct.

[2] Alaska imposes a statutory duty on civilian landlords to "keep all common areas of the premises in a clean and safe

BOLT v. UNITED STATES                    15605

condition," Alaska Stat. § 34.03.100(a)(2), a duty that includes an obligation to remove snow and ice, *see Coburn v. Burton*, 790 P.2d 1355, 1358 (Alaska 1990) (applying Alaska Stat. § 34.03.100(a)(2)). Pursuant to § 2674, the government is liable for its employees' negligence "in the same manner and to the same extent as a private individual under like circumstances." Because an Alaska landlord would be liable to a private individual under like circumstances, Bolt adequately alleged a claim under the FTCA based on the Army's failure to clear the common parking area of snow and ice.

It is immaterial to this jurisdictional analysis that the Army's Snow Removal Policy is more specific than the analogous state law duty. *See Indian Towing Co. v. United States*, 350 U.S. 61, 67 (1955) (rejecting argument that FTCA liability is predicated on "the presence of identical private activity"); *Lutz*, 685 F.2d at 1183-85 (finding "a state law duty enforceable under the FTCA," where the federal regulation at issue was more specific than the state law duty). As we explained in *Lutz*: "The federal statute or regulation under which the employee acted only becomes pertinent when a state law duty is found to exist. The federal statute or regulation may then provide the standard for reasonable care in exercising the state law duty." 685 F.3d at 1184. Here, Alaska law imposes a duty on private landlords to keep common areas clear of snow and ice for the safety of tenants. Pursuant to the Army's Snow Removal Policy, the standard of reasonable care in exercising that state law duty was to remove snow and ice from Family Housing Parking Areas once per year, in late February or March.

The government argues, however, that Bolt's claim falls under the discretionary function exception to § 1346's waiver of sovereign immunity and that the district court therefore improperly exercised jurisdiction.

[3] Section 2680(a) provides that no liability shall lie for claims "based upon the exercise or performance or the failure

15606                BOLT v. UNITED STATES

to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." Pursuant to the two-prong test announced in *United States v. Gaubert*, 499 U.S. 315 (1991), to determine the applicability of this exception:

> we ask whether the alleged wrongful conduct violated a specific and mandatory regulation or statute. If so, the conduct is outside the realm of discretion. If there is no mandatory regulation or statute involved, we then ask whether the conduct was susceptible to being based upon social, economic, or political policy.

*Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942, 945 (9th Cir. 2003) (citations omitted). "The government bears the burden of proving that the discretionary function applies." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). It has failed to do so here.

### A.

The *Gaubert* test's first prong asks whether the alleged conduct "violated a specific and mandatory regulation or statute." *Bibeau*, 339 F.3d at 945.

The Army's Snow Removal Policy requires snow removal from family housing parking areas "once per year in late February or March." Its 1998-99 Housing Handbook additionally imposed specific duties on the Senior Occupant, Sergeant Khan, to "insure all . . . common areas are free of trash, snow and ice" and to report conditions beyond his capability to handle to the Mayor of the complex.

The district court correctly concluded that these requirements were "specific and mandatory" such that the discretionary function exception did not apply. *See Gaubert*, 499 U.S. at 322 (rejecting application of the exception when the "fed-

| BOLT v. UNITED STATES | 15607 |
|---|---|

eral statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive" (internal quotation marks omitted)); *Summers v. United States*, 905 F.2d 1212, 1214 (9th Cir. 1990) (explaining that a government official's failure to take a required action "would not be covered under the FTCA's discretionary function exception to liability").

The fact that clearing snow and ice from Family Housing Parking Areas ranks fifth in the Snow Removal Policy's sequential priority system for snow removal operations does not render the obligation to perform this removal once a year, by the end of March, discretionary. While snow and ice removal from some other areas takes precedence over Family Housing Parking Areas, nothing in the Snow Removal Policy authorizes the Army not to meet its yearly deadline to clear such areas "once per year in late February or March." At most, the sequential priority system—including a provision that this system "is subject to change during emergency situations"—gives the Army discretion to change dates within the expressly mandated February to March time-frame. Nor does the "Special Notice" set forth later in the Policy that "[a]reas in which vehicles have not been removed will be bypassed and moved to bottom of the list" give the Army discretion not to clear snow from these areas until after the deadline.[1] *See Navarette v. United States*, 500 F.3d 914, 917-18 (9th Cir. 2007) (concluding that Army's obligation to "properly mark[ ] or fence[ ]" dangerous conditions was mandatory and explaining that it "retained discretion as to *how* to mark

---

[1] Even if the Snow Removal Policy did give the Army discretion to clear snow after March under certain circumstances, the Army has not alleged that it faced any of these circumstances here. *Cf. GATX/Airlog Co.*, 286 F.3d at 1174 (imposing burden of proving the discretionary function exception on the government); *O'Toole v. United States*, 295 F.3d 1029, 1032 (9th Cir. 2002) ("All of the factual allegations in the plaintiff's complaint are to be taken as true in reviewing a discretionary function exception dismissal under the FTCA.").

or fence drop-offs, but that does not mean it retained discretion *whether* to do so"); *Soldano v. United States*, 453 F.3d 1140, 1150 (9th Cir. 2006) (holding that flexibility in Park Service's standards for establishing speed limits did not mean that "the Standards' basic, scientific safety specifications may be disregarded").

[4] In sum, the Snow Removal Policy expressly imposes a specific and mandatory duty to clear Family Housing Parking Areas of snow and ice once a year, before the end of March. The Army has therefore failed its burden under the first *Gaubert* prong.

B.

Even if we were to conclude that the Snow Removal Policy allowed the Army some discretion in deciding when to remove snow from Family Housing Parking Areas and how to prioritize that duty, under the second *Gaubert* prong we would nonetheless conclude that such discretion "is [not] the type of decision-making that the discretionary function was designed to protect." *Conrad v. United States*, 447 F.3d 760, 765 (9th Cir. 2006).

"The purpose of the [discretionary function] exception is 'to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " *ARA Leisure Servs. v. United States*, 831 F.2d 193, 194 (9th Cir. 1987) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984)); *see also Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1023 (9th Cir. 1989) ("[T]he discretionary function exception was aimed particularly at the government's actions in its role as a regulator." (internal quotation marks omitted)). At this second step, it is therefore "insufficient for the government to show merely that some choice was involved in the decision-making process. The balancing of policy considerations is a

necessary prerequisite." *ARA Leisure Servs.*, 831 F.2d at 195 (alterations and internal quotation marks omitted).

[5] The government proffers two policy considerations, neither of which supports application of the exception. It first argues that the Army considers its limited financial resources in making snow removal decisions. In enacting § 2680, however, Congress did not intend to protect decision-making based on budgetary constraints. *See O'Toole*, 295 F.3d at 1035-36; *ARA Leisure Servs.*, 831 F.3d at 196.

[6] The government's second policy rationale—that the Army considers its policy of promoting self-help and responsibility among resident homeowners in making snow removal decisions—likewise fails. The Army chose, in drafting the Snow Removal Policy, to assign significant responsibility for snow and ice removal to residents. It did not, however, include the promotion of self-help among residents as a factor warranting the exercise of discretion in deciding when to conduct snow and ice removal from Family Housing Parking Areas. Assuming that the Snow Removal Policy allows the Army some discretion in deciding when to clear snow and ice from these areas, under the Policy's express terms the Army may consider only weather, emergency situations, and whether parked cars would block removal in exercising this discretion. Whereas it also could have included the promotion of self-help and responsibility as an additional factor authorizing a discretionary decision to postpone snow and ice removal, it did not do so. "[T]he design of a course of governmental action is shielded by the discretionary function exception, whereas the implementation of that course of action is not." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005). Because the Army did not design its Snow Removal Policy so as to allow for consideration of resident self-help in deciding when to conduct the yearly snow and ice removal, it cannot shield its failure to implement its own requirement under this rationale.

[7] We have also previously explained that "maintenance work is not the kind of regulatory activity" to which the Supreme Court envisioned the discretionary function exception applying. *ARA Leisure Servs.*, 831 F.2d at 195 (rejecting government's characterization of its failure to maintain a segment of a road in a national park as a policy-grounded decision); *see also id.* (noting an absence of any "clear link between Park Service road policies and the condition of Thoroughfare Pass"); *O'Toole*, 295 F.3d at 1036 (holding that Bureau of Indian Affairs' failure to repair an irrigation system "involve[d] a mundane question of routine ditch maintenance" and was "not the sort of public policy issue that the discretionary function exception is designed to protect"). "The danger that the discretionary function exception will swallow the FTCA is especially great where the government takes on the role of a private landowner," *O'Toole*, 295 F.3d at 1037, and we are mindful of our duty "to effectuate Congress's intent to compensate individuals harmed by government negligence[ by liberally construing] the FTCA, as a remedial statute" and by reading "its exceptions . . . narrowly," *id.*

[8] Not only does clearing snow and ice from parking lots constitute a matter of routine maintenance beyond the scope of the discretionary function exception, but the maintenance at issue here "involves safety considerations under an established policy" rather than "the balancing of competing public policy considerations." *ARA Leisure Servs.*, 831 F.2d at 195 (alteration and internal quotation marks omitted). The Army's failure to remove snow and ice from the Family Housing Parking Area where Bolt slipped obviously implicated residents' safety—indeed, Bolt presented evidence that several other residents had slipped on "black ice" in the same area during the spring of 1999—rendering inapplicable any public policy consideration to which the Army might now point. In these circumstances "[i]mposing tort liability will not lead to judicial second-guessing of [the Army's] policy decisions." *ARA Leisure Servs.*, 831 F.2d at 196; *see also Seyler v. United*


*States*, 832 F.2d 120, 123 (9th Cir. 1987) ("[W]e doubt that any decision not to provide adequate [warning] signs would be of the nature and quality that Congress intended to shield from tort liability."). Here, as in *ARA Leisure Services*, "the rationale for the [discretionary function] exception falls away." 831 F.3d at 195.

### IV.

Having concluded that the district court properly exercised jurisdiction over Bolt's claim, we next consider whether it erred in granting summary judgment to the government based on its conclusion that the Army did not owe her a duty to remove snow and ice from the area where she slipped.

[9] As discussed above, Alaska Statute section 34.03.100(a)(2) imposes a duty on private landlords to "keep all common areas of the premises in a clean and safe condition," including an obligation to remove snow and ice. *See Coburn*, 790 P.2d at 1358. Because it is undisputed that the Army failed to meet this duty, summary judgment in the government's favor was inappropriate.

[10] In concluding to the contrary, the district court incorrectly relied on *Hale*, which holds that municipalities are not liable for "injuries sustained by persons due to ice and snow on sidewalks." 389 P.3d at 437. The FTCA creates no exceptions for government conduct similar to that undertaken by municipalities. The relevant question for purposes of Bolt's claim is whether a private landlord would owe tenants a duty to keep common areas free of snow and ice. 28 U.S.C. § 2674; *Lutz*, 685 F.2d at 1184. Under Alaska law the Army owed Bolt a duty to remove snow and ice from common areas such as the Parking Area where she slipped, and Bolt has alleged that the Army breached this duty in failing to meet the standard of care prescribed by the Snow Removal policy. Whether the Army did in fact breach its duty is a question of fact to be determined on remand, along with the elements of

causation and harm. *See Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996) (enumerating elements of negligence claim under Alaska law).

V.

[11] Finally, we deny Bolt's request for reassignment to a different district judge on remand, pursuant to § 2106. In general, when presented with such a request we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 372-73 (9th Cir. 2005) (internal quotation marks omitted). Although the district judge incorrectly applied *Hale*, we have no reason to think that on remand he will have difficulty applying the correct law to Bolt's negligence claim. Nor do these circumstances suggest that reassignment is "advisable to preserve the appearance of justice."

VI.

Bolt properly alleged a claim for negligence under the FTCA based on the Army's failure to meet its duty to conduct its yearly snow and ice removal from the parking area where she slipped prior to April 1999. This omission does not fall with the discretionary function exception to the Act. Because a similarly situated private landlord would be liable under similar circumstances, we must reverse the summary judg-

ment and remand for further proceedings consistent with this opinion.

**AFFIRMED in part; REVERSED in part; REMANDED.**

---

WALLACE, Circuit Judge, concurring:

I concur in the result reached by the majority. Section 2680(a) of the FTCA provides an exception for claims based on the "exercise or performance or . . . failure to exercise or perform a discretionary function or duty." Under *United States v. Gaubert*, 499 U.S. 315 (1991), we first ask "whether the alleged wrongful conduct violated a specific and mandatory regulation or statute." *Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942, 945 (9th Cir. 2003) (citing *Gaubert*, 499 U.S. at 324-25). If the answer is yes, our analysis ends, and the discretionary exception does not apply. *Id.*

Bolt alleges that Sergeant Khan breached his duty to ensure that the residents removed the snow from the lot as well as his duty to report the lot's hazardous conditions to the appropriate authorities.

The Residents' Handbook charges Sergeant Khan, as Senior Occupant, with responsibility "for the supervision, as necessary, of resident policing and appearance." This includes "timely removal of snow and ice from steps, porches, driveways and sidewalks." Although the Handbook makes residents responsible "for the removal (within 24 hours) of snow and ice from steps, porches, driveways, mailboxes, and sidewalks," the Senior Occupant must ensure "all residents comply with th[is] instruction[ ]." According to the Handbook, such "[c]oordination of building residents is necessary to [e]nsure all adjoining and common areas are free of trash, snow and ice." This shows a "specific and mandatory" duty,

not a discretionary one. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1027 (9th Cir. 1989) (as amended).

Similarly, Sergeant Khan had a non-discretionary duty to report hazardous conditions in the lot to the appropriate authorities to the extent he was unable to remedy them. The Handbook directs that the Senior Occupant "need[s] to report" when "deficiencies occur or conditions exist that are beyond [his] authority or capability to handle."

Under the test outlined in *Bibeau*, this is all we must do to decide the issue of jurisdiction. Once we determine that the alleged conduct violated a specific or mandatory regulation, that conduct automatically falls outside the realm of the discretionary exception and we need not proceed with any other analysis. Thus, I conclude the majority's remaining jurisdiction analysis is unnecessary.

As there is jurisdiction, I agree with the majority that under Alaska law, the landlord (government) had a duty to "keep all common areas of the premises in a clean and safe condition," Alaska Stat. § 34.03.100(a)(2), a duty that included removing snow and ice. *See Coburn v. Burton*, 790 P.2d 1355, 1358 (Alaska 1990).

Thus the summary judgment of the district court should be reversed.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.